NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY PHYSICIANS UNITED RECIPROCAL EXCHANGE,<br><br>                      Plaintiff,<br><br>v.<br><br>BOYNTON & BOYNTON, INC., KEVIN BYRNE, DOES 1-10,<br><br>                      Defendants. | Civil Action No. 12-05610 (FLW)(TJB)<br><br>**OPINION** |

**WOLFSON, United States District Judge:**

Before the Court is the Motion of Boynton & Boynton and Kevin Byrne ("Defendants") to Dismiss Counts I (Lanham Act), II (state law libel), V (state law slander), and VIII (New Jersey Insurance Trade Practices Act) of the Complaint of New Jersey Physicians United Reciprocal Exchange ("NJ PURE" or "Plaintiff") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons that follow, this Court finds that Plaintiff's Second Amended Complaint (i) states a claim under the Lanham Act in Count I, (ii) states a claim for state law libel in Count II, (iii) states a claim for state law slander in Count V, and (iv) fails to state a claim under the New Jersey Insurance Trade Practices Act in Count VIII. Accordingly, Count VIII of the Second Amended Complaint is dismissed, and Defendants' motion to dismiss Counts I, II, and V is denied.

1

I. Background

Plaintiff is a New Jersey not-for-profit reciprocal interinsurance exchange in the business of selling malpractice insurance to physicians and other potential policyholders. [Second Amended Complaint, ¶ 1]. According to the allegations in the Second Amended Complaint, Defendant Boynton & Boynton is an insurance broker in the business of soliciting, advertising, and obtaining clients for competitors of Plaintiff in the medical malpractice liability insurance market. [*Id.* at ¶ 2]. Defendant Byrne is an employee of Boynton & Boynton. [*Id.* at ¶ 3]. Does 1-10 are as yet unidentified individuals whom Plaintiff expects discovery shall reveal to have been responsible for the unlawful conduct of Defendant Boynton & Boynton in an as yet unspecified manner. [*Id.* at ¶ 4].

Plaintiff alleges that Defendants have and continue to knowingly make false or misleading written and oral statements to the public critiquing Plaintiff's business operations and insurance services. Specifically, Defendants are alleged to have libeled and slandered Plaintiff in oral and email exchanges between Defendant Byrne and two specifically identified prospective clients of Plaintiff and to have engaged in unfair competitive practices by issuing "Marketplace Updates" to Plaintiff's prospective clients which offer misleading or false comparisons of Plaintiff's financials with those of for-profit competitors served by Defendants. [*Id.* at ¶ 24]. While the Second Amended Complaint discusses the content of the emails and "Marketplace Updates" at length, the core of Plaintiff's allegations is that these documents portray as significant certain of Plaintiff's financial indicators and statistics which are not relevant to the financial health of a not-for-profit reciprocal exchange. Plaintiff's competitors, who are Defendants' clients, are for-profit entities for whom these same indicators and statistics are relevant to financial health. The comparison between Plaintiff's and the competitors' indicators

2

and statistics thus is alleged to give a false or misleading impression of Plaintiff's relative inferiority and undesirability as a malpractice insurer to potential clients. As a result of Defendants' allegedly false and misleading statements, Plaintiff claims that it suffered and continues to suffer harm in the form of lost former clients, delays in obtaining new clients, and lost potential future clients. [Second Amended Complaint, ¶ 20]. To redress its injuries, Plaintiff requests both injunctive relief and money damages. [*Id.* at p. 29-30 (a)-(g)].

II. Procedural History

Plaintiff initiated this action by Complaint on September 7, 2012, alleging violation of the Lanham Act and asserting New Jersey State libel, slander, tort, and statutory claims. As originally filed, Plaintiff's Lanham Act claim relied exclusively upon email exchanges between Defendant Byrne, a representative of Boynton & Boynton, and two of Plaintiff's prospective clients. Plaintiff alleged that Defendants had engaged in unfair competitive practices by making disparaging false statements about Plaintiff, particularly that Plaintiff's financial position was inferior to that of its competitors and that such financial weakness made it a less desirable provider of insurance. On September 21, 2012, before any defendant had been served with summons, Plaintiff filed an Amended Complaint, which elaborated upon its existing claims.

Defendants moved to dismiss the Amended Complaint on November 9, 2012. On May 3, 2013, this Court denied Defendants' motion without prejudice and instructed that Plaintiff amend its Complaint to include alleged newly discovered information relevant to its claims. Plaintiff filed the Second Amended Complaint on May 17, 2013, which, *inter alia*, amended the Lanham Act claim to reference, in addition to the aforementioned email exchange, false or misleading

promotional materials created by Defendants and disseminated to Plaintiff's present and potential customers. These "Marketplace Updates" were alleged to have contained false or misleading information. Defendant responded, on June 17, 2013, with the motion to dismiss the Second Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) that is now before the Court.

III. Standard of Review

When reviewing a motion to dismiss on the pleadings for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Philips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 149-50 n. 3 (1984) (quotation and citation omitted).

Accordingly, a district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" *Bell Atlantic v. Twombly,* 550 U.S. 544 (2007) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 (1974)). As the Third Circuit has stated, "a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 547 (2007)) (internal quotation marks omitted). In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. *Hedges v. U.S.,* 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991)). Moreover, in deciding a motion to dismiss, the Court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of Plaintiff's claim. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n. 3 (3d Cir. 2004).

IV. Jurisdiction

This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331 because Count I of the Complaint for relief under the Lanham Act, § 43, codified at 15 U.S.C. § 1125(a), raises a

question of federal law. This Court has supplemental jurisdiction over Plaintiff's remaining New Jersey state law claims pursuant to 28 U.S.C. § 1367.

V. Lanham Act (Complaint Count I)

Section 43 of the Lanham Act creates a private cause of action for, among others, persons damaged or likely to be damaged by false or misleading statements about their products disseminated to the purchasing public. Specifically, the section of the Act upon which the Plaintiff relies in this case provides that:

> (1) Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . .
>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). In the Second Amended Complaint, Plaintiff alleges two distinct categories of false or misleading representations of fact. Firstly, Plaintiff contends that Defendants made direct false or misleading representations, via email to Plaintiff's current and potential future clients, that NJ PURE's financial health was inferior to that of its competitors. [Second Amended Complaint, ¶¶ 25-39]. Secondly, Plaintiff contends that Defendants drafted and distributed false or misleading "comparative advertisements" to Plaintiff's current and potential future clients in the form of "Marketplace Updates," which deceptively made NJ

PURE's finances appear inferior to those of its for-profit competitors. [Second Amended Complaint, ¶¶ 40-91].

Defendants' challenge to Plaintiff's Lanham Act claim is likewise twofold. Firstly, Defendants assert that the claim regarding Defendants' email messages fails because Plaintiff does not allege that Defendants' statements were disseminated "in commercial advertising or promotion" to the degree required under the Lanham Act § 43(a)(1)(B). Secondly, Defendants contend that the claim regarding the "Marketplace Updates" fails because the statements made in the Updates were "literally true" under Lanham Act jurisprudence and Plaintiff does not allege that the current and potential future clients who received the Updates were actually mislead, a judge-made requirement for Lanham Act claims involving "literally true" statements.

A. Commercial Advertising or Promotion

While the Third Circuit has not yet decided the matter, all other Circuits to consider what standard courts should apply in determining whether representations constitute commercial advertising or promotion under § 43(a)(1)(B) have adopted some form of the multi-prong test laid out in *Gordon & Breach Science Publishers, S.A. v. American Institute of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994).

> In order for representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B), they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While he representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273-74 (10th Cir. 2000) (quoting *Gordon*, 859 F. Supp. at 1535–36); *accord LidoChem, Inc. v. Stoller Enterprises, Inc.*, 500 Fed. Appx.

7

373, 379 (6th Cir. 2012); *Podiatrist Ass'n, Inc. v. La Cruz Azul De Puerto Rico, Inc.*, 332 F.3d 6, 19–20 (1st Cir. 2003); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57–58 (2d Cir. 2002); *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1121 (8th Cir. 1999); *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 734–35 (9th Cir. 1999); *Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1384–85 (5th Cir. 1996).

Defendants' brief in support of the Motion focuses exclusively upon the fourth factor of the *Gordon* test. Defendants contend that the two email exchanges cited by Plaintiff are insufficient to plead that Defendants' allegedly false or misleading statements were disseminated among the relevant purchasing public so as to constitute "advertising or promotion" under the Act. In support of this contention, Defendants direct the Court's attention to the Court of Appeals for the First Circuit's decision in *Podiatrist Ass'n, Inc. v. La Cruz Azul*, 332 F.3d 6 (1st Cir. 2003). There, the First Circuit interpreted the fourth prong of the *Gordon* test to require more than individual incidences of communication between specific parties to allege Lanham act "advertising or promotion." Instead "to pass the pleading threshold in a Lanham Act § 43(a)(1)(B) case, a plaintiff at the very least must identify some medium or means through which the defendant disseminated information to a particular class of consumers." *Id.* at 19-20.[1] Defendants argue that the emails identified by Plaintiff are mere "individual incidences of

---

[1] The First Circuit's full reasoning is useful to place its holding in context:
> While the Lanham Act's commercial disparagement provision covers more than classic advertising campaigns, it is nonetheless aimed at specific forms of communication. . . . To constitute advertising or promotion, commercial speech must at a bare minimum target a class or category of purchasers or potential purchasers, not merely particular individuals. . . . Thus, to pass the pleading threshold in a Lanham Act § 43(a)(1)(B) case, a plaintiff at the very least must identify some medium or means through which the defendant disseminated information to a particular class of consumers. The plaintiffs' allegations here lack this critical component; they do not implicate the use of any particular advertising or promotional medium. This omission opened the Lanham Act count to dismissal under Rule 12(b)(6).

*Podiatrist Association, Inc. v. La Cruz Azul*, 332 F.3d 6, 19-20 (1st Cir. 2003).

communication between specific parties," and thus do not constitute the required advertising or promotional "medium" required by at least one circuit court of appeals, and therefore cannot serve as the basis of a Lanham Act claim.

The scope of Plaintiff's claim, however, is much broader than Defendants describe. Plaintiff *offers supporting evidence* of only two sets of email exchanges between Defendant Byrne and specifically identified prospective clients of Plaintiff, but *alleges* a much larger scheme of libelous and slanderous statements disseminated by email and other media. Specifically, Plaintiff claims "[o]n information and belief, Defendants have each publicly distributed additional written and oral commercial advertisements or promotions containing libelous and slanderous statements substantially similar to the . . . emails from defendant Byrne. . . . Defendants each intentionally and willfully made false, misleading, and deceptive factual representations in their commercial advertisements as part of a campaign to discredit NJ PURE's business, products and services offered in interstate commerce." [Second Amended Complaint, ¶ 24]. At this early stage of a motion to dismiss, before the parties have engaged in discovery, Plaintiff is entitled to proceed with such allegations on information and belief. A properly stated "claim requires a complaint with enough factual matter (taken as true) to suggest the required element," in this case sufficiently disseminated commercial advertisement or promotion. Plaintiff is not, therefore, required to introduce supporting evidence to make it probable that Defendants' allegedly defamatory emails were disseminated widely enough to constitute "commercial advertising or promotion," but rather must simply allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at

234 (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 547 (2007)) (internal quotation marks omitted). The allegations in the Complaint easily cross this threshold.[2]

B. Consumers Actually Mislead

Defendants acknowledge that the Second Amended Complaint alleges that Defendants advertised and/or promoted false or misleading information about Plaintiff's financial condition and insurance services in "Marketplace Updates" sent to Plaintiff's potential clients. [Brief in Support, VIII(B)(2)]. Accordingly, instead of challenging the dissemination of the Updates in seeking to dismiss the Second Amended Complaint, Defendants argue that Plaintiff has not sufficiently pleaded another element of a false advertising claim, that any of the prospective clients were actually mislead.

The Third Circuit has clearly explained that there are two ways to prove a false or misleading advertising claim under the Lanham Act.

> Either the advertisement must be literally false, or it must be literally true but misleading to the consumer. *Castrol Inc. v. Pennzoil Co.,* 987 F.2d 939, 943 (3d Cir. 1993). If an advertisement is literally false, the plaintiff does not have to prove actual consumer deception. *Id.* If, on the other hand, an advertisement is literally true but misleading, the plaintiff must prove actual deception by a preponderance of the evidence. *Id.* If a claim is literally true, a plaintiff "'cannot obtain relief by arguing how consumers could react; it must show how consumers actually do react.'" *Id.* (quoting *Sandoz Pharm. Corp. v. Richardson–Vicks, Inc.,* 902 F.2d 222, 228–29 (3d Cir. 1990)).

---

[2] Although I now find that Plaintiff has adequately pleaded that the allegedly false or misleading statements made by Defendants were disseminated sufficiently to Plaintiff's prospective clients, a court in this district has recently recognized an alternative basis for denying Defendants' challenge. In *Refundo, LLC v. Drake Enterprises, Ltd.*, Civ. A. 13-643 JLL, 2013 WL 1750016 (D.N.J. Apr. 22, 2013), the court found that whether a statement was disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion under the Lanham Act "raises a question of fact that would be inappropriate to decide on a motion to dismiss." *Accord Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1274 n. 9 (10th Cir. 2000).

*Highmark, Inc., v. UPMC Health Plan, Inc.*, 276 F.3d 160, 171 (3d Cir. 2001). In the Second Amended Complaint, Plaintiff seeks relief under both theories, asserting that Plaintiff was harmed by Defendants' statements in "Marketplace Updates" that were literally false, or, in the alternative, based upon true financial data but misleading in their presentation. [¶¶ 41, 51-3, 80-2]. Defendants contend that all the statements made in the "Marketplace Updates" were literally true, and that Plaintiff has accordingly failed to state a claim for relief in not alleging "actual deception" of any current or potential clients.

As a threshold matter, Defendants' contention that the financial indicator data reproduced in the "Marketplace Updates" is literally true is a question of fact, not now properly before the Court. On a Rule 12(b)(6) motion the Court is limited to the factual allegations in the complaint and supporting essential documents. This Court does not have access to the details of NJ PURE's financial records which would be required to verify the veracity of Defendants' claim of literal truth, and will not hazard a guess based upon the assertions and counterassertions in the parties' motion papers. The only question of law now before the Court concerning this aspect of Plaintiff's Lanham Act Claim is whether Plaintiff has *stated a claim* under either the "literally false" or the "literally true but misleading" theories of recovery.

"In analyzing whether an advertisement or product name is literally false, a court must determine, first, the unambiguous claims made by the advertisement or product name, and second, whether those claims are false." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) (citing *Clorox Co. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 34 (1st Cir. 2000)). Plaintiff has pleaded that the unambiguous claims included in Defendants' "Marketplace Updates" included side-by-side comparisons of for-profit firm financial data and NJ PURE's financial data, coupled with

explanatory paragraphs which explained the significance of the financial indicators in such a way that was true for Plaintiff's for-profit competitors, but not true for a non-profit entity such as Plaintiff. [Second Amended Complaint, ¶ 82; *see also* ¶¶ 41-81].

Plaintiff has also pleaded that these statements taken together are "literally false." [*Id.* at ¶ 82]. In this Circuit a "'literally false' message may be either explicit or 'conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Novartis*, 290 F.3d 586-87. While Plaintiff contends that certain of Defendants' statements — including those in the referenced email exchanges — are explicitly false, the core of Plaintiff's claim concerning the comparison of Plaintiff's financial data to that of for-profit competitors, alleges falsity by necessary implication. [*See* Second Amended Complaint, ¶¶ 45-82]. Stated simply, Plaintiff has pleaded that by comparing for-profit and not-for-profit insurers in a side-by-side chart listing factors some of which are not relevant to the evaluation of not-for-profit companies, and by accompanying the chart with statements about the significance of those factors which are true only for for-profit companies, the "Marketplace Updates" convey the message that NJ PURE is not a financially sound insurer as clearly as if it had been stated directly. The Third Circuit's Lanham Act jurisprudence recognizes just such a claim. Because I find that Plaintiff has pleaded that Defendants' commercial advertisements and promotions are "literally false," I will not evaluate the Complaint under the "true but misleading" standard which may also have been pleaded.

VI. Libel and Slander (Complaint Counts II and V)

Under the New Jersey law of defamation, governing libel and slander claims, to a assert a cause of action a plaintiff must plead:

> (1) a defamatory statement of fact; (2) concerning the plaintiff; (3) which was false; (4) which was communicated to a person or persons other than the plaintiff; (5) with actual knowledge that the statement was false or with reckless disregard of the statement's truth or falsity or with negligence in failing to ascertain the truth or falsity; and (6) which caused damage.

*Monroe v. Host Marriot Services Corp.*, 999 F. Supp. 599, 603 (D.N.J. 1998)(citing *Feggans v. Billington*, 291 N.J. Super. 382, 391, 677 A.2d 771 (1996)). In support of their Motion to Dismiss, Defendants contend that Plaintiff has failed to adequately allege the sixth element of a defamation claim, that Plaintiff was actually caused harm by Defendants' allegedly false or misleading statements. Defendants further contend that New Jersey courts are not permitted to presume damages in defamation cases, so Plaintiff must plead special damages to properly state a claim.

As an initial matter, Plaintiff clearly pleads damages. The Second Amended Complaint alleges "[a]s a direct and proximate result of [Defendants'] libelous and slanderous statements regarding NJ PURE as a business as well as NJ PURE's products and services, NJ PURE has and will continue to suffer pecuniary harm in the form of loss of former medical malpractice liability policyholders, delays in obtaining new medical malpractice policyholders and the loss of prospective contracts with potential medical malpractice liability policyholders." [Second Amended Complaint, ¶ 20]. The only question for the court in reviewing Defendants' Motion is, therefore, whether this pleading is sufficient under New Jersey law. In answering this question, I find the case of *W.J.A. v. D.A.*, 210 N.J. 229 (2012), raised in briefing by Plaintiff, to be instructive. There, the New Jersey Supreme Court made clear that the doctrine of presumed

damages still applies in private defamation cases. *Id.* at 248-49. ("We question why New Jersey's longstanding common law tradition of presumed damages—for defamation claims by private citizens on matters that do not involve public concern—should be altered now . . . . We are not persuaded that the common law of this state need change to require such victims to demonstrate compensatory losses in order to proceed with a cause of action."). Accordingly, Plaintiff's claim would proceed even if its alleged damages were found to be nominal, reputational harm. *Id.* at 240 ("[a] nominal damages award may be made in a defamation case to a plaintiff who has not proved a compensable loss."). It is abundantly clear that the alleged loss of former, present, and future clients, and reputational harm arising from allegedly misleading advertisements concerning Plaintiff's financial health states a claim of at least nominal damages. In any event, whether Plaintiff can adequately establish compensatory or only nominal damages is a question of fact not now before the Court. *Id.* at 249. Defendant's motion to dismiss Counts II and V is therefore denied.

VII. Insurance Trade Practices Act (Complaint Count VIII)

Defendants contend that Plaintiff cannot as a matter of law state a claim for unfair competition in violation of the New Jersey Insurance Trade Practices Act ("ITPA"), N.J.S.A. 17:29B-1, *et seq.*, because that statute does not provide for a private cause action. The law is indeed well-settled that violations of the ITPA do not give rise to private causes of action. *Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254, 262 (3d Cir. 2007); *Pickett v. Lloyd's*, 131 N.J. 457, 467 (1993); *Pierzga v. Ohio Casualty Group of Ins. Cos.*, 208 N.J. Super. 40, 47 (App. Div.) *certif. denied*, 104 N.J. 399 (1986). Accordingly, Plaintiff does not contest that the ITPA cannot

form the sole basis of its unfair competition claim. Instead, Plaintiff contends that Count VIII actually seeks relief under the New Jersey state tort law of unfair competition and merely "relies on the standards promulgated in the ITPA, specifically N.J.S.A. 17:29:B-4(2) and (3), in support of [that] allegation." [Brief in Opposition, p. 38].

Plaintiff's argument that other independent state law causes of action may use violations of the ITPA's unfair business practices regulations as support is not totally without precedent. On at least one occasion, the New Jersey Supreme Court has found that conduct violative of the ITPA also gives rise to an independent, state common law private cause of action. *Pickett*, 131 N.J. 457 (1993) ("Although the regulatory framework does not create a private cause of action, it does declare state policy and we do not think that finding a cause of action for the breach of the duty of good faith and fair dealing would conflict with that policy."). The New Jersey Supreme Court has not specifically addressed whether finding a cause of action for the tort of unfair competition would conflict with the policy of the ITPA.

In the case at bar, however, Plaintiff's Complaint clearly alleges violations of and requests redress "under the New Jersey Insurance Trade Practices Act and specifically N.J.S.A. 17:29B-4(2), (3)." [Second Amended Complaint, ¶ 148; *see also* Complaint, ¶ 142]. While Plaintiff has argued in its Opposition that Count VIII actually requests relief under state tort law, this contention is found nowhere in the Second Amended Complaint. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) (quoting *Commw. of Pa. ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)). Accordingly, because the ITPA indisputably does not create a private cause of action for violations of its unfair practices regulations, and the

15

language in the only Complaint now before me asserts no other legal basis for relief, Count VIII of the Complaint is dismissed.[3]

Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss the Second Amended Complaint is granted in part and denied in part as follows. Defendant's Motion to Dismiss Count I of the Second Amended Complaint, asserting a claim of unfair competition under the Lanham Act is denied. Defendant's Motion to Dismiss Counts II and V of the Second Amended Complaint, asserting New Jersey state libel and slander claims respectively, is denied. Count VIII of the Second Amended Complaint, under the New Jersey Insurance Trade Practices Act, does not state a claim for relief and is dismissed.

Order to follow.


Dated:  1/28/2014    /s/ Freda L. Wolfson
 The Honorable Freda L. Wolfson
 United States District Judge

---

[3] The Court takes note of Plaintiff's request in briefing for leave to make a curative amendment in the event that Count VIII should be dismissed, but I disagree with Plaintiff's cursory argument that such leave must be granted as of right. [Brief in Opposition, p. 38 n.4]. If Plaintiff wishes to add a claim for relief based upon the New Jersey state common law tort of unfair competition, Plaintiff may formally move for leave to amend the Complaint to include such claim. As it stands, however, Count VIII of the Complaint unequivocally seeks redress under N.J.S.A. 17:29B-4(2) and (3), a statute which does not provide for a private cause of action. Count VIII must, therefore, be dismissed.