NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NEW JERSEY PHYSICIANS UNITED RECIPROCAL EXCHANGE,**<br><br>Plaintiff,<br><br>v.<br><br>**BOYNTON & BOYNTON, INC., et al.,**<br><br>Defendants. | Civil Action No. 12-5610 (FLW)<br><br>Memorandum Opinion |
| **NEW JERSEY PHYSICIANS UNITED RECIPROCAL EXCHANGE,**<br><br>Plaintiff,<br><br>v.<br><br>**THE MEDICAL PROTECTIVE COMPANY, INC., et al.,**<br><br>Defendants. | Civil Action No. 13-2286 (PGS)<br><br>Memorandum Opinion |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon non-party Brain S. Kern's ("Kern") motion for a protective order, seeking either to quash subpoenas for testimony and documents served on him or, in the alternative, modify same. [Docket Entry No. 41 in Civil Action No. 12-5610; Docket Entry No. 46 in Civil Action No. 13-2286]. Plaintiff New Jersey Physicians United Reciprocal Exchange ("NJPURE") opposes Kern's motion and cross moves to enforce the subpoenas [Docket Entry No. 46 in Civil Action No. 12-5610]. Both Kern and NJPURE seek the imposition of attorneys fees and costs in connection with their motions. The Court has fully reviewed and considered all arguments made in support of and in opposition to Kern's motion and NJPURE's cross-motion. The Court considers same without oral argument pursuant to

L.Civ.R. 78.1(b).  For the reasons set forth more fully below, both motions are GRANTED in part and DENIED in part.  Further, both requests for attorneys fees and costs are DENIED.

I.      **Background and Procedural History**

NJPURE is a not-for-profit reciprocal interinsurance exchange which provides medical malpractice insurance to physicians and other potential policyholders.  (Second Am. Compl. ¶ 1 in Civil Action No. 12-5610; Compl. ¶1 in Civil Action No. 13-2286).  Boynton & Boynton, Inc. ("Boynton") is an insurance agency in the business of selling medical malpractice insurance.  (*See* Second Am. Compl. ¶2 in Civil Action No. 12-5610; Answer to Am. Compl. ¶ 2 in Civil Action No. 12-5610).  Kevin Byrne ("Byrne") is a licensed agent of Boynton.  (*See Id*. ¶ 3; Answer to Am. Compl. ¶3 in Civil Action No. 12-5610).  The Medical Protective Company, Inc. *d/b/a* Princeton Insurance Company ("Princeton") is a for-profit entity organized for the purpose of engaging in the insurance business, including medical malpractice insurance.  (Compl. ¶¶ 2, 17 in Civil Action No. 13-2286); Def. Answer ¶ 2, 17 in Civil Action No. 13-2286).

On September 7, 2012, NJPURE filed a Complaint, which it twice amended, against Boynton and Byrne.  Through its Second Amended Complaint, NJPURE claims that Boynton and Byrne have and continue to make false or misleading written and oral statements to the public about NJPURE's business operations and insurance services.  As examples of Boynton and Byrne's false or misleading statements, NJPURE relies on email exchanges between Byrne and two specifically identified prospective clients of NJPURE as well as on "Marketplace Updates" issued by Boynton and Byrne to NJPURE's prospective clients.  NJPURE alleges that the "Marketplace Updates" offer misleading or false comparisons between its financials and those of its for-profit competitors served by Boynton and Byrne. (Second Am. Compl. ¶ 24 in Civil Action No. 12-5610).  Given Boynton and Byrne's alleged scheme to disseminate libelous

and slanderous information about NJPURE to the public via email and other media, NJPURE has asserted claims against Boynton and Byrne for violations of the Lanham Act, Section 43, 15 U.S.C. § 1125(a) (Unfair Competition) as well as New Jersey common law claims for libel, libel *per se*, slander, slander *per se*, trade libel and tortious interference with prospective contractual relationships.  (*Id*. ¶¶ 5-7; 92-139).[1]

On April 10, 2013, NJPURE filed suit against Princeton. Through its Complaint, it claims that Princeton has and continues to make false or misleading written and oral statements to the public about NJPURE's business operations and insurance services.[2]  The only false or misleading statements referenced in the Complaint are Princeton's annual "Marketplace Updates," which NJPURE refers to as the "False Comparative Advertisements."  (Compl. ¶ 28 in Civil Action No. 13-2286).  NJPURE alleges that the "Marketplace Updates" offer misleading or false comparisons between its financials and those of its for-profit competitors, such as Princeton.  (*Id*. ¶ 30).  Based on Princeton's distribution of the "Marketplace Updates," NJPURE has asserted a claim against Princeton for violations of the Lanham Act, Section 43, 15 U.S.C. § 1125(a) (Unfair Competition) as well as New Jersey common law claims for libel, libel *per se*, trade libel and tortious interference with prospective contractual relationships.  (*Id*. ¶¶ 4-6; 72-108).[3]

---

[1] NJPURE also asserted claims against Boynton and Byrne under the Insurance Trade Practices Act; however, these claims were dismissed.  (*See* Opinion and Order of 1/28/2014; Docket Entry Nos. 39 & 40 in Civil Action No. 12-5610).

[2] While NJPURE's Complaint in Civil Action No. 13-2286 references both written and oral statements (*see, e.g.* Compl. ¶ 68), the only false or misleading statements referenced in the Complaint are Princeton's annual, written "Marketplace Updates" and NJPURE has only asserted various libel claims, no claims for slander, against Princeton.

[3] As in the Boynton and Byrne matter, NJPURE also asserted a claim against Princeton under the Insurance Trade Practices Act; however, NJPURE later stipulated to the dismissal of this claim. (*See* Stipulation and Order of Dismissal of 5/8/2014; Docket Entry No. 56 in Civil Action No. 13-2286).

NJPURE currently seeks to depose Kern in relation to its cases against Boynton and Byrne, and Princeton. At issue are two subpoenas, which Kern seeks to quash, or at a minimum to modify.[4] The first is a subpoena dated November 12, 2013, which required Kern to appear for a deposition and produce documents in connection with Civil Action No. 12-5610.[5] Specifically, the subpoena required Kern to produce:

1. Any and all communication you have had with any representative, employee, or agent of Boynton & Boynton, Inc., including but not limited to Kevin Bryne, regarding NJPURE's business, products, services, or financial condition.

2. Any and all communications you have had regarding NJPURE's business, products, services, or financial condition.

3. Any and all other documents in your possession, custody, or control referring to, relating to, or concerning NJPURE including, but not limited to, NJPURE's business, products, services, or financial condition.

(Kern Cert. Ex. F).

---

[4] A third subpoena was also served on Kern. In fact, said subpoena was the first served on Kern and required him to appear for a deposition. It was served on March 28, 2013 in Civil Action No. 12-5610. In light of the second subpoena served in Civil Action No. 12-5610, which is addressed herein, the Court does not discuss in detail the first subpoena; though the Court occasionally references the testimony generated from the deposition obtained as a result of same.

[5] While NJPURE has argued that this subpoena sought information from Kern with respect to both Civil Action No. 12-5610 (the "Boynton Matter") and Civil Action No. 13-2286 (the "Princeton Matter") as the two matters were consolidated for discovery purposes, only Civil Action No. 12-5610 was included on the subpoena. Further, while the Court had discussed consolidating the Boynton Matter with the Princeton Matter for discovery purposes as early as May 2013, the parties did not agree to same as there was a conflict concern for the defendants. Concerns regarding consolidation were referenced during conferences held in June and August 2013. Because of the parties' inability to reach an agreement with respect to consolidation, the Court recently entered an Order requiring a formal motion regarding same to be filed by August 8, 2014. As such, if NJPURE intended the subpoena to also apply to the Princeton Matter, its caption should have appeared on same. More importantly, even if the matters had been consolidated for discovery purposes, it is unclear how Kern would have had notice of same without there having been some indication in the subpoena itself. This point, however, is essentially moot as a subpoena has now been served in the Princeton Matter and that subpoena is also before the Court on this motion.

The second subpoena is dated February 4, 2014 and was served in connection with Civil Action No. 13-2286.  Like the first, this subpoena requires Kern to appear for a deposition and produce documents.  Specifically, it directs Kern to produce:

1. Any and all communications you have had regarding NJPURE's business, products, services or financial condition.

2. Any and all other documents in your possession, custody, or control referring to, relating to or concerning NJPURE including, but not limited to, NJPURE's business, products, services or financial condition.

(Kern Cert. Ex. K).

Kern has produced certain documents and has already given testimony in response to the November 12, 2013 subpoena.  He objects to further responding to same and likewise objects to having to respond to the February 4, 2014 subpoena.  Kern argues that both subpoenas are overbroad and seek irrelevant information.  For example, Kern argues that the last two document requests of the November 12, 2013 subpoena seek information that has no bearing on NJPURE's claims against Boynton and Byrne.  The same is true with respect to the document requests contained in the February 4, 2014 subpoena and NJPURE's claims against Princeton.  Further, Kern objects to being deposed on topics unrelated to NJPURE's claims against Boynton and Byrne, or Princeton.  Kern contends that the transcripts from his prior depositions (as stated above, Kern has already been deposed in connection with the November 12, 2013 subpoena; he has also already been deposed pursuant to a subpoena served on March 28, 2013 in Civil Action No. 12-5610) establish NJPURE's intent to question him on matters not related to the asserted claims, but related to potential claims that NJPURE may seek to assert against him.

Kern notes that while he is a non-party in these matters, his relationship with NJPURE is adversarial.  In this regard, Kern points to a cease and desist letter (the "Cease and Desist

5

Letter") dated January 23, 2009 sent to him by NJPURE that threatens litigation based upon allegedly defamatory statements made by Kern about NJPURE and its business practices and insurance products in an article written by Kern in November 2007 entitled "The Facts Behind a Negative Ad Campaign" and at seminars and conventions at which Kern spoke as well as in telephone conversations between Kern and NJPURE's existing and potential clients.  (*See* Kern Cert. Ex. B).  Kern argues that NJPURE is abusing its subpoena power by seeking to obtain evidence from him that does not relate to its claims against Boynton and Byrne, or Princeton.

NJPURE, however, argues that Kern's motions to quash must be denied and its cross motion to compel granted.  NJPURE contends that the information it seeks pursuant to the November 12, 2013 and February 4, 2014 subpoenas is directly relevant to its claims against Boynton and Byrne, and Princeton.  Further, NJPURE argues that its prior attempts to depose Kern establish that it was seeking relevant testimony despite Kern's attorney's obtrusive objections.  NJPURE contends that there is nothing objectionable about it seeking background information from Kern concerning his knowledge of the insurance industry, industry related terminology, etc.  NJPURE further maintains that this type of questioning is particularly necessary here in light of Kern's inability to recollect information when asked as is evidenced by the number of "I don't recall" or substantially similar responses contained in the deposition transcripts.  As a result, NJPURE requests that the Court compel Kern to comply fully with both subpoenas.

**II.      Analysis**

At issue here are the two subpoenas discussed above which require non-party Kern to appear for depositions with respect to the Boynton and Princeton Matters and to produce various categories of documents.  (*See* Kern Cert. Exs. F, K).  In determining whether these subpoenas

should be quashed or enforced, the Court examines whether the discovery sought via same falls within the permissible scope of discovery in federal litigation.  *See OMS Investments, Inc. v. Lebanon Seaboard Corp.*, Civil Action No. 08-261 (AET), 2008 WL4952445, *2 (D.N.J. Nov. 18, 2008); *Schmulovich v. 1161 Rt. 9 LLC*, Civil Action No. 07-597 (FLW), 2007 WL 2362598, *2 (D.N.J. Aug. 15, 2007) (citing *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D.Kan. 2003) (holding that "Rule 45 subpoena served in conjunction with discovery must fall within the scope of proper discovery under FED.R.CIV.P. 26(b)(1).")  Rule 26(b) governs the scope of discovery in federal litigation.

Pursuant to Rule 26(b)(1), the scope of permissible discovery is quite broad.  Indeed, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . .  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1).  Despite this breadth, discovery does have its limits and because Kern is a non-party, he is afforded greater protection from discovery than a normal party.  *See Laxalt v. McClathy*, 116 F.R.D. 455, 458 (D.Nev. 1986).  In fact, "the standards for nonparty discovery require a stronger showing of relevance than for simple party discovery."  *Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990).

If a subpoena falls outside the scope of discovery permitted by Rule 26(b)(1), then, upon a timely motion, the Court has authority to quash or modify same.  Rule 45(d)(3).  Indeed, the Court must quash or modify a subpoena that "subjects a person to undue burden."  Rule 45(d)(3)(A)(iv).  In addition, "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(C)."  Rule 26(b)(1).  Finally, as always, the Court has broad discretion in managing

requests for discovery and determining the appropriate scope of discovery.  *See Salamone v. Carter's Retail, Inc.*, Civil Action No. 09-5856 (GEB), 2011 WL 310701, *5 (D.N.J. Jan. 28, 2011); *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) (finding that conduct of discovery is committed to sound discretion of the Court).

With these principles in mind, the Court turns to the two subpoenas served on Kern.  In so doing, the Court notes that Kern is a somewhat atypical non-party.  While many subpoenaed non-parties may align more closely with one party over another, typically their relationship with the party subpoenaing them is generally neutral and certainly non-confrontational.  The same cannot be said about Kern and NJPURE.

The enmity between Kern and NJPURE dates back to at least November 2007 when Kern published an article entitled "The Facts Behind a Negative Ad Campaign" in New Jersey M.D. News magazine, which was critical of NJPURE.  (*See* Kern Cert. Ex. A).  The conflict between the two escalated in January 2009 when NJPURE in turn sent Kern the Cease and Desist Letter. (*See* Kern Cert. Ex. B).  While litigation never ensued between NJPURE and Kern, the inimicality between the two has not diminished.  Indeed, the transcript from Kern's first deposition reveals open hostility between NJPURE, its counsel and Kern and his counsel.  While the second deposition seems to have been more subdued, the tenor of some of the questions asked during this deposition and many of the answers provided in response, confirms that the relationship between NJPURE and Kern clearly remains adversarial, though perhaps no longer antagonistic.  The adversarial nature of NJPURE and Kern's relationship is self-evident and Kern's main concern here is that NJPURE is not deposing him to obtain information relevant to the two pending lawsuits, but instead improperly seeks to obtain information that it can use to bring claims against Kern, himself.

The Court has reviewed the two subpoenas as well as the prior deposition transcripts and is sensitive to Kern's concerns. Nevertheless, the Court believes that Kern does possess information relevant to the Boynton and Princeton Matters. As a result, the Court shall require Kern to respond to the subpoenas, albeit with certain modifications, and to appear for another deposition.

With respect to the document requests contained in the two subpoenas, the Court finds that, as written, questions 2 and 3 in the November 12, 2013 subpoena and questions 1 and 2 in the February 4, 2014 subpoena are overbroad and seek information not relevant to the two matters currently being litigated by NJPURE. As a result, these document requests are modified as follows: (1) Document Request No. 2 in the November 12, 2013 subpoena and Document Request No. 1 in the February 4, 2014 subpoena are limited to communications had with any representative, employee, or agent of Boynton and/or Princeton, including but not limited to Byrne, or to which any representative, employee, or agent of Boynton and/or Princeton, including but not limited to Byrne, had access; and (2) Document Request No. 3 in the November 12, 2013 subpoena and Document Request No. 2 in the February 4, 2014 subpoena are limited to documents that were shared with any representative, employee, or agent of Boynton and/or Princeton, including but not limited to Byrne, or to which any representative, employee, or agent of Boynton and/or Princeton, including but not limited to Byrne, had access. Kern is directed to produce said information no later than **September 19, 2014**. Further, to the extent he has not already done so, Kern is directed to produce documents responsive to Document Request No. 1 of the November 12, 2013 subpoena no later than **September 19, 2014**.

With respect to the deposition of Kern, NJPURE is directed to focus its questions on issues concerning its claims against Boynton and Byrne, and Princeton. However, the Court shall not prohibit NJPURE from asking Kern background questions about his general knowledge of the insurance industry, industry related terminology, etc. There is nothing inappropriate about such questions. Moreover, these lines of questioning may be necessary for NJPURE to build a foundation to support its more focused questions regarding Boynton, Byrne and Princeton. While Kern, through counsel, may object to any questions for which he believes an objection is warranted, speaking objections shall not be tolerated. Further, absent an instruction not to answer based on privilege concerns, all questions must be answered.[6] NJPURE, however, is cautioned not to push the boundaries too far with respect to its background questions.

In addition, whether truly founded or not, given Kern's understandable concerns regarding the possibility that NJPURE may initiate suit against him in the future, the Court finds good cause for the entry of a protective order under Rule 26(c)(1) limiting any party's use of Kern's testimony to the prosecution and/or defense of the claims currently at issue in both the Boynton and Princeton Matters. To the extent any party seeks to use Kern's testimony for any other reason, that party must obtain a Court order permitting same and must provide Kern notice of their intent to do so.

Finally, the Court denies the parties' competing requests for the imposition of attorneys fees and costs. The Court finds that neither party has demonstrated that the imposition of

---

[6] If Kern believes that NJPURE has considerably overstepped the line of permissible questioning, he may contact the Court during the deposition regarding same, as all parties remain free to do. Contacting the Court, however, is not the preferred solution and, indeed, should be treated as a measure of last resort and used only when a significant substantive issue arises that the parties are unable to resolve on their own. In this respect, the parties are reminded of their discovery obligations under the rules and counsel is reminded of its professional responsibilities.

attorneys fees and costs are warranted either in preparing for and participating in the past depositions or in connection with the instant motions.

### III.    Conclusion

For the reasons stated above, Kern's motion for a protective order is GRANTED in part and DENIED in part.  So too is NJPURE's cross-motion to enforce its subpoenas.  An appropriate Order follows.

September 2, 2014

<u>s/ Tonianne J. Bongiovanni</u>
**TONIANNE J. BONGIOVANNI**
**United States Magistrate Judge**
