**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

NEW JERSEY PHYSICIANS UNITED RECIPROCAL EXCHANGE,

Plaintiff,

v.

BOYNTON & BOYNTON, INC. KEVIN BYRNE; DOES 1-10,

Defendants.

Civil Action No. 12-5610 (FLW)(LHG)

**OPINION**

WHITBOY, INC., D/B/A BOYNTON & BOYNTON,

Third-Party Plaintiff,

v.

JOANNA ELIAS; ERIC POE; AND DOES 1-10,

Third-Party Defendants.

NEW JERSEY PHYSICIANS UNITED RECIPROCAL EXCHANGE,

Plaintiff,

v.

THE MEDICAL PROTECTIVE COMPANY, INC. D/B/A PRINCETON INSURANCE COMPANY; DOES 1-10,

Defendants.

Civil Action No. 13-2286 (FLW)(LHG)

**WOLFSON, United States District Judge**:

This matter comes before the Court on a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) filed by Plaintiff New Jersey Physicians United Reciprocal Exchange ("NJ PURE"), and Third-party Defendants Joanna Elias ("Elias") and Eric Poe ("Poe") (collectively "Third-Party Defendants"), seeking dismissal of the First Amended Counterclaim, Third Party Complaint and Demand for Trial by Jury ("Counterclaim") filed by Defendant/Third-party Plaintiff Whitboy, Inc. d/b/a Boynton and Boynton's ("Boynton").

For the following reasons, NJ PURE's motion to dismiss is denied in part and granted in part, and Third-Party Defendants' motion to dismiss is granted. Specifically, NJ PURE's motion to dismiss Counts I and II of the counterclaim is denied. NJ PURE's motion to dismiss Count III of the counterclaim is denied with respect to Boynton's claim of tortious interference with its contract with OB/GYN of North Jersey. NJ PURE's motion to dismiss Count III of the counterclaim is granted with respect to Boynton's claim of tortious interference with its prospective economic advantage with OB/GYN of North Jersey, and tortious interference with its contract and prospective economic advantage with University Radiology Group; Pulmonary & Allergy Associates; and unknown, prospective customers. Third-Party Defendants' motion to dismiss the third-party claims is granted, and the third-party complaint is dismissed.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are drawn from Boynton's counterclaim and third party complaint, the allegations of which are assumed as true for the purposes of this motion.

Boynton is an insurance agent that, among other things, brokers the sale of medical malpractice insurance policies to physicians and other individuals engaged in the provision of healthcare. Counterclaim ¶¶ 1, 5, 13. Plaintiff NJ PURE is a "reciprocal inter-insurance

exchange," that is engaged in the "direct sale of medical malpractice insurance policies that it produces itself to physicians and other individuals and institutions engaged in the provision of healthcare." Counterclaim ¶¶ 2, 6, 14. Third-Party Defendants Elias and Poe were employees of NJ PURE during the relevant time period asserted in the Counterclaim. Counterclaim ¶¶ 3, 16.

Boynton alleges it is in direct competition with NJ PURE because NJ PURE markets its medical malpractice insurance policies directly to potential insureds, without the use of a broker. Counterclaim ¶¶ 15-17. Boynton further alleges NJ PURE made false and misleading statements that NJ PURE was rated favorably by A.M. Best Company ("A.M. Best")[1] to several existing and prospective customers of Boynton, when it has not been so-rated. Counterclaim ¶¶ 24-26. Specifically, Boynton alleges:

- On April 25, 2012, NJ PURE, through Poe, emailed a representative of Boynton's client, University Radiology Group ("URG"), and represented that NJ PURE had an A.M. Best Capital Adequacy Ratio ("BCAR") score of 183.6, which "qualifies [NJ PURE] for an A++ (Superior) rating." Counterclaim ¶¶ 27-31.

- On May 11, 2012, NJ PURE, through Elias, emailed a representative of Boynton's client, Pulmonary & Allergy Associates ("PAA"), and represented that NJ PURE had an A.M. Best Capital Adequacy Ratio ("BCAR") score of 183.6, which "qualifies [NJ PURE] for an A++ (Superior) rating." Counterclaim ¶¶ 32-35. In a later meeting in May 2012, Elias also allegedly "touted NJ Pure's rating with A.M. Best Company" to a representative of PAA. Counterclaim ¶¶ 36-37.

- At some point in May or June 2012, an unknown employee of NJ PURE verbally advised Boynton's client, OB/GYN of North Jersey ("OB/GYN"), "that NJ PURE had received a favorable rating from A.M. Best Company," and that "[b]ased upon [that] solicitation . . . [OB/GYN] left Boynton and began procuring its medical malpractice insurance coverage through NJ PURE." Counterclaim ¶¶ 39-40.

- On various other dates, unknown employees of NJ PURE contacted prospective and existing clients of Boynton to solicit their medical malpractice business by

[1] Boynton alleges that A.M. Best is a well-known company devoted to issuing in-depth reports and financial strength ratings of insurance companies, and that a favorable rating from A.M. Best is a "coveted assurance of an insurance company's financial strength." *See generally* Counterclaim ¶¶ 18-23.

providing false and misleading information concerning NJ PURE's rating with A.M. Best. Counterclaim ¶ 41.

NJ PURE brought suit against Boynton and Defendant Kevin Byrne ("Byrne") on September 7, 2012, and filed an amended complaint on September 21, 2012, and a second amended complaint on May 17, 2013, alleging Lanham Act violations and common law claims for trade libel, libel, libel *per se*, slander, slander *per se*, tortious interference with prospective contractual relations, and unfair competition under the Insurance Trade Practices Act ("ITPA"), N.J.S.A. 17:29B-4(2)-(3).

On July 17, 2013, Boynton and Byrne moved to dismiss NJ PURE's claims for violation of the Lanham Act, libel, slander, and unfair competition under the ITPA. On January 28, 2014, the Court dismissed the Complaint only as to the claim of unfair competition under the ITPA, and denied Boynton's motion to dismiss the other counts.

On February 28, 2014, Boynton filed a counterclaim against NJ PURE, and a third-party complaint against Poe and Elias, alleging that Boynton suffered economic injury as a result of NJ PURE's false statements that NJ PURE was favorably rated by A.M. Best. On March 21, 2014, NJ PURE and Third-Party Defendants filed a motion to dismiss Boynton's counterclaim and third-party complaint.

On April 21, 2014, Boynton filed a motion for leave to amend the counterclaim and third-party complaint. On September 29, 2014, the Court ordered Boynton's counterclaims and third-party complaint stricken, and referred Boynton's motion to amend to Magistrate Judge Bongiovanni. On November 25, 2014, Magistrate Judge Bongiovanni granted Boynton's motion to amend its counterclaim and third-party complaint.

On December 10, 2014, Boynton filed its first amended counterclaim and third-party complaint, in which Boynton asserted four causes of action (in three counts) against NJ PURE:

(1) Unfair Competition in violation of the Lanham Act, 15 U.S.C.A. § 1125(a)(1)(A); (2) False promotion in violation of the Lanham Act, 15 U.S.C.A. § 1125(a)(1)(B); and (3) tortious interference with (i) contract and (ii) prospective economic advantage. Boynton alleges identical counts against Elias and Poe in its third-party complaint. On April 23, 2015, NJ PURE and Third-Party Defendants answered the counterclaim and third-party complaint. On May 29, 2015, NJ PURE and Third-Party Defendants filed the instant motion to dismiss the counterclaim and third-party complaint pursuant to Federal Rule of Civil Procedure 12(c).

## II. STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings "after the pleadings are closed but within such time as not to delay trial." Fed. R. Civ. P. 12(c). The applicable standard on a motion for judgment on the pleadings is similar to that applied on a motion to dismiss pursuant to Rule 12(b)(6). *Spruill v. Gillis*, 372 F.3d 218, 223 n. 2 (3d Cir. 2004). When reviewing a motion made pursuant to Rule 12(c), a court must take all allegations in the relevant pleading as true, viewed in the light most favorable to the non-moving party. *Gomez v. Toledo*, 446 U.S. 635, 636 n.3 (1980); *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 253 (3d Cir. 2004). All reasonable inferences must be made in the non-moving party's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). "The motion should not be granted 'unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law.'" *Mele*, 359 F.3d at 253 (quoting *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002)). Accordingly, in order to survive a motion for judgment on the pleadings, the non-moving party's pleading must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the non-moving party to show "more than a

sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Third Circuit has required a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Judgment on the pleadings pursuant to Rule 12(c) will be granted where the moving party clearly establishes there are no material issues of fact to be resolved, and that he or she is entitled to judgment as a matter of law. *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008).

## III. DISCUSSION

### A. Boynton has Alleged a *Prima Facie* violation of the Lanham Act against NJ PURE, but Not Against Third-Party Defendants.

Boynton asserts two different causes of action under the Lanham Act: Count I, "unfair competition" under 15 U.S.C.A. § 1125(a)(1)(A), and Count II, "false promotion" under 15

U.S.C.A. § 1125(a)(1)(B).[2] NJ PURE and Third-Party Defendants move to dismiss Boynton's Lanham Act counts on three grounds: (1) lack of prudential standing under the Lanham Act; (2) failure to allege an actual injury, and (3) failure to allege any statement that is literally false or misleading and tending to deceive. The motion to dismiss Counts I and II of the counterclaim is denied because Boynton has standing to pursue its Lanham Act claims against NJ PURE, and it has sufficiently alleged NJ PURE made literally false or misleading statements that proximately caused an actual injury to Boynton. The motion to dismiss Counts I and II of the third-party complaint is granted because Boynton does not have standing to pursue its Lanham Act claims against Third-Party Defendants.

---

[2] "Section 1125(a) of Title 15 of the United States Code creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Knit With v. Knitting Fever, Inc.*, No. 12-3219, 2015 U.S. App. LEXIS 15575, at *27 (3d Cir. Sept. 2, 2015). Specifically, Section 43(a) of the Lanham Act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125(a)(1).

**i. Boynton has Standing under the Lanham Act to Assert Claims against NJ PURE, but Not Against Third-Party Defendants.**

As a preliminary matter, the Court notes that the parties have expended considerable briefing on the issue of "prudential standing" under the Lanham Act, focusing specifically on the multi-factor balancing test articulated by the Third Circuit in *Conte Bros. Auto. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221 (3d Cir. 1998).[3] However, the Supreme Court established a new analytical framework for determining standing under the Lanham Act and other statutes in *Lexmark International, Inc. v. Static Control Components, Inc.*, __ U.S. __, 134 S.Ct. 1377, 1384 (2014). No party addresses the *Lexmark* decision.[4]

In *Lexmark*, the Supreme Court held that, rather than employ the five-factor *Conte* test to determine "prudential" standing (a label the Court described as "misleading," 134 S. Ct. at 1386), or other tests utilized by different circuits,[5] courts should instead apply (1) the statutory zone-of-

[3] Those five factors are "(1) The nature of the plaintiff's alleged injury: Is the injury of a type that Congress sought to redress in providing a private remedy for violations of the antitrust laws? (2) The directness or indirectness of the asserted injury. (3) The proximity or remoteness of the party to the alleged injurious conduct. (4) The speculativeness of the damages claim. (5) The risk of duplicative damages or complexity in apportioning damages." *Conte Bros.*, 165 F.3d at 233 (citations and internal quotation marks omitted).

[4] Although no party addresses *Lexmark*, additional briefing in not necessary on the issue. In abrogating *Conte*, the Supreme Court described that test as a "commendable effort to give content to an otherwise nebulous inquiry," but found it "slightly off the mark." *Lexmark*, 134 S. Ct. at 1392. The Court observed that *Conte*'s "first factor can be read as requiring that the plaintiff's injury be within the relevant zone of interests and the second and third as requiring (somewhat redundantly) proximate causation," but took issue with the Third Circuit's treatment of these requirements as factors that could be balanced against each other. *Id.* Additionally, the Court found the fourth and fifth factors (relating to damages) were inappropriate considerations when determining standing. *Id.* By analyzing the first three factors under *Conte*, the parties implicitly addressed the two factors required under *Lexmark*, and, accordingly, the Court can consider their arguments within the appropriate context of *Lexmark* to determine whether Boynton has standing under the Lanham Act.

[5] In *Lexmark*, the Supreme Court also rejected the direct-competitor test and reasonable interests test. *Id.* at 1392-93.

interests test and (2) the proximate cause requirement, which, together, "suppl[y] the relevant limits on who may sue" under, *inter alia*, the Lanham Act. *Id.* at 1391. The Court held that under the statutory zone-of-interests test, to come within the zone of interests protected by §1125(a), "a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 1390. And, under proximate causation principles, "a plaintiff suing under §1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1392. In other words, to maintain a cause of action for false advertising under § 1125(a), "a plaintiff must plead . . . an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id.* at 1395.

Here, Boynton alleges in its counterclaim that it suffered an economic injury – loss of a customer – which was proximately caused by NJ PURE's misrepresentation of its rating by A.M. Best:

> 39. Upon information and belief sometime in May or June 2012, an employee, representative or agent of NJ PURE, whose identity is presently unknown to Boynton, acting with the actual and apparent authority of NJ PURE, verbally advised Boynton's customer OB/GYN of North Jersey that NJ PURE had received a favorable rating from A.M. Best Company.
>
> 40. Based upon the solicitation referred to in the preceding paragraph, the customer left Boynton and began procuring its medical malpractice insurance coverage through NJ PURE.

Counterclaim ¶¶ 39-40. Based on these allegations, the Court finds that Boynton has standing to pursue its Lanham Act claims against NJ PURE Boynton has alleged an injury that comes within the "zone of interests" protected by the Lanham Act – its commercial interest in sales to OB/GYN.[6]

[6] Relying on the deposition testimony of Byrne, NJ PURE argues that Boynton, as a broker, is not compensated directly by procurers of medical malpractice insurance, but instead is paid by insurers based on the premiums Boynton's generates on their behalf. However, the Court must

*Lexmark*, 134 S. Ct. at 1390. And Boynton avers that this injury was proximately caused by NJ PURE's allegedly false and misleading statement to OB/GYN regarding its A.M. Best rating. *id.* at 1392.[7]

However, with respect to Boynton's third-party claims, no such loss is alleged. Boynton alleges that Poe misrepresented NJ PURE's rating to URG, but that customer is not alleged to have ceased its business relationship with Boynton. Counterclaim ¶¶ 27-31. Likewise, Boynton alleges that Elias made similar misrepresentations to PAA in email and in person, but that customer is also not alleged to have ceased its business relationship with Boynton. Counterclaim ¶¶ 32-38. Although Boynton alleges that it has suffered "substantial economic damages" as a result of these statements, Counterclaim ¶¶ 74, 80, it does not allege any loss of sales or damage to its business reputation that was proximately caused by Third-Party Defendants. Accordingly, Counts I and II of the third-party complaint are dismissed for lack of standing.

---

accept Boynton's allegation that it lost OB/GYN as a customer as true for purposes of this motion. *Mele*, 359 F.3d at 253.

[7] NJ PURE argues, within the rubric of *Conte*, that Boynton has failed to allege a competitive and direct injury, and that Boynton's damages are too remote because another class of plaintiffs – other insurance companies – were more directly injured by NJ PURE's alleged misrepresentations. These arguments are unavailing. First, the Supreme Court in *Lexmark* also rejected application of a "direct-competitor test" for standing under the Lanham Act. 134 S. Ct. at 1392. As the Court observed: "[t]o be sure, a plaintiff who does not compete with the defendant will often have a harder time establishing proximate causation. But a rule categorically prohibiting all suits by noncompetitors would read too much into the Act's reference to 'unfair competition' in §1127." *Id.* Second, while Boynton and NJ PURE may not compete in *producing* insurance policies, they clearly compete in *selling* insurance policies – even if direct competition were still a requirement after *Lexmark*. Boynton and NJ PURE are clearly in direct competition to sell medical malpractice insurance in the same market. Whether other entities were more injured by NJ PURE's alleged misrepresentations does not affect whether Boynton has standing under the Lanham Act.

**ii. Boynton has Alleged an Actual Injury under the Lanham Act against NJ PURE.**

NJ PURE argues that Boynton cannot recover monetary damages because it does not allege an "actual injury" under the Lanham Act. A plaintiff seeking only injunctive relief to stop violations of Section 43(a) of the Lanham Act needs only to plead "a reasonable basis for the belief that plaintiff is likely to be damaged as a result of the false advertising." *Warner-Lambert Co. v. BreathAsure, Inc.*, 204 F.3d 87, 95 (3d Cir. 2000). In order to state a claim under the Lanham Act to recover monetary damages, Boynton must plead that it was damaged as result of NJ PURE's misrepresentation or that NJ PURE profited from that misrepresentation. *See* 15 U.S.C.A. § 1117. In other words, Boynton must plead "that the falsification or misrepresentation actually deceives a portion of the buying public." *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 922 (3d Cir.) (citing *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648 (3d Cir. 1958), *cert. denied*, 498 U.S. 816 (1990). However, "[t]his does not place upon the plaintiff a burden of proving [or pleading] detailed individualization of loss of sales. Such proof goes to quantum of damages and not to the very right to recover." *Id.* (quoting *Parkway Baking*, 255 F.2d at 648); *see also Warner-Lambert*, 204 F.3d at 92 ("[A] plaintiff seeking damages under § 43(a) must establish customer reliance but need not quantify loss of sales as that goes to the measure of damages, not plaintiff's cause of action.").

Here, Boynton has alleged that NJ PURE's misrepresentation actually deceived a portion of the buying public which profited NJ PURE – Boynton alleges that OB/GYN was deceived by NJ PURE's misrepresentation regarding it's A.M. Best rating, ceased using Boynton as its broker, and switched its insurance coverage to NJ PURE, all based on that misrepresentation. Counterclaim ¶¶ 39-40. NJ PURE's alleged conduct thus led Boynton to seek both injunctive

relief and monetary relief under the Lanham Act, Counterclaim ¶ 65(a-e), which are proper requests for relief here.

**iii. Boynton has Alleged that NJ PURE's Statements were Literally False or Misleading and Tending to Deceive.**

NJ PURE also argues that Count II of the counterclaim must be dismissed for failure to allege that NJ PURE's statements were either literally false, or misleading and tending to deceive. To allege a Lanham Act violation under 15 U.S.C.A. § 1125(a)(1)(B), Boynton must plead:

> (1) the defendant made false or misleading statements about the plaintiff's [or his own] product; (2) there is actual deception or a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff.

*Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, 292 F. Supp. 2d 594, 598 (D.N.J. 2003) (quoting *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 171 (3d Cir. 2001); *see also Trans USA Prods. v. Howard Berger Co.*, No. 07-5924, 2008 U.S. Dist. LEXIS 25370, at *13-14 (D.N.J. Mar. 28, 2008).

"[L]iability arises under section 43(a)(1)(B) if the defendant makes a commercial message or statement that is either literally false, or literally true but ambiguous such that it has the tendency to deceive consumers." *Trans USA Prods.*, 2008 U.S. Dist. LEXIS 25370 at *12-13 (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002); *see also Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993) (noting "a plaintiff must prove *either* literal falsity *or* consumer confusion, but not both") (emphasis in original). "[I]f the plaintiff alleges literal falsity, he need not show that the audience was misled." *Trans USA Prods.*, 2008 U.S. Dist. LEXIS 25370 at *14 (citing *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir.), *cert. denied*, 546 U.S. 1031 (2005)). "If the advertisement is literally true, the plaintiff must persuade the court that the persons

to whom the advertisement is addressed would find that the message received left a false impression about the product." *Blue Cross of Greater Phila.*, 898 F.2d at 922-23 (citation and internal quotation marks omitted).

"When analyzing a challenged advertisement, the court first determines what message is conveyed." *See id.* at 922. In doing so, many district courts within this circuit have applied a so-called "slightly heightened" or "intermediate" pleading standard for false advertising claims under the Lanham Act, although the Third Circuit has not yet addressed the issue.[8] *See, e.g.*, *Trans USA Prods.*, 2008 U.S. Dist. LEXIS 25370 at *14-15; *Wellness Publ'g v. Barefoot*, No. 02-3773, 2008 U.S. Dist. LEXIS 1514, at *44-47 (D.N.J. Jan. 9, 2008); *Evco Tech. & Dev. Co. v. Buck Knives, Inc.*, No. 05-6198, 2006 U.S. Dist. LEXIS 68549, at *14-19 (E.D. Pa. Sept. 22, 2006); *Gallup, Inc. v. Talentpoint, Inc.*, No. 00-5523, 2001 U.S. Dist. LEXIS 18560, at *37-39 (E.D. Pa. Nov. 13, 2001); *Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F. Supp. 1549, 1556 (E.D. Pa. 1985). As a district court in New Jersey has explained:

> [B]ased on [the] fraudulent element necessary in a Lanham Act claim, this Court has applied an "intermediate" pleading requirement to false advertising claims asserted under section 43(a)(1)(B) that imposes a pleading standard between those standard[s] required under Federal Rules of Civil Procedure 8 and 9. This intermediate approach, first applied in *Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F. Supp. 1549 (E.D. Pa. 1985), strikes a balance between application and outright rejection of Rule 9(b). The slightly heightened pleading requirement is necessary in Lanham Act claims because, [i]n litigation in which one party is charged with making false statements, it is important that the party charged be provided with sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow him to make a proper defense. Thus, Plaintiff must plead its

---

[8] *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, No. 14-137, 2014 U.S. Dist. LEXIS 44063, at *11 (W.D. Pa. Apr. 1, 2014) ("[T]he Third Circuit has not yet adopted this heightened pleading standard, and district courts disagree over the applicable standard. Moreover, as other district courts in this circuit have observed, the standard set forth in [*Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F. Supp. 1549 (E.D. Pa. 1985)] was decided prior to the Supreme Court's decisions in *Twombly* and *Iqbal* as well as the Third Circuit's decision in *Fowler*.") (citations omitted).

> Lanham Act claims with more particularity than traditional notice pleading under Rule 8 but something less than the specificity of Rule 9.

*Trans USA Prods.*, 2008 U.S. Dist. LEXIS 25370 at *14-15 (citations and internal quotation marks omitted).[9]

Assuming *arguendo* that this intermediate pleading standard is applicable in Lanham Act false advertising claims, Boynton has clearly satisfied such a standard. Here, Boynton alleges that in "May or June of 2012" an unknown representative of NJ Pure "verbally advised" a representative of OB/GYN that "NJ PURE had received a favorable rating from A.M. Best Company."[10] Counterclaim ¶ 40. Although Boynton does not allege the exact content of the statement NJ PURE made to OB/GYN, it has provided a two-month date range, and provided a specific allegation as to the nature of the statement made and why that statement was false. Boynton's allegation rises above the level of specificity that other courts have rejected under the intermediate pleading standard for false advertising claims under the Lanham Act. *See, e.g.*, *Trans USA Prods.*, 2008 U.S. Dist. LEXIS 25370 at *16-17 (granting motion to dismiss where complaint did not identify what devices were sold with counterfeit marks or the time period during which those products were sold); *Barefoot*, 2008 U.S. Dist. LEXIS 1514 at *45-47 (dismissing complaint where allegations did "little more than parrot the relevant statute"); *Max Daetwyler*, 608 F. Supp.

---

[9] Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

[10] Boynton also alleges that NJ PURE (through Elias and Poe) sent emails to URG and PAA representing that NJ PURE had a certain BCAR score, and that that score would "qualif[y]" it for an A++ rating, Counterclaim ¶¶ 27-31, 34-35, and that in May 2012 Elias met with a representative of PAA and "affirmatively stated that NJ PURE had an official rating with A.M. Best Company." Counterclaim ¶¶ 36-37. However, since neither of these communications are alleged to have resulted in damage to Boynton, the Court need not address whether they sufficiently plead the literally false or misleading requirement.

at 1554, 1556 (finding that allegation that defendants merely "falsely advertised the quality and nature" of a blade-shaped device for wiping excess ink from printing surfaces "cannot be read as an allegation that defendants misrepresented the configuration of their blade to make it appear that the blade was shaped similarly to plaintiffs' blade."). Indeed, in contrast to the deficient allegations in *Max Daetwyler*, Boynton not only alleges that NJ PURE misrepresented the quality of its insurance services, but it specifically alleges that NJ PURE misrepresented that NJ PURE had been rated favorably by A.M. Best. Boynton's allegation regarding the nature of NJ PURE's allegedly literally false or misleading statement – i.e., that in May or June of 2012, NJ PURE falsely represented that it had (1) a rating from A.M. Best and (2) that that rating was favorable – is "sufficiently detailed" so as to allow NJ PURE to mount a proper defense. *See Trans USA Prods.*, 2008 U.S. Dist. LEXIS 25370 at *12-14; *Evco Tech.*, 2006 U.S. Dist. LEXIS 68549 at *14.

### B. Boynton has Alleged a *Prima Facie* Case of Tortious Interference with Contract Against NJ PURE, but not Third-Party Defendants.

NJ PURE and Third-party Defendants move to dismiss Count III of the counterclaim and third-party complaint based on a failure to plead damages with sufficient specificity.[11] Under New Jersey law, tortious interference with contract (or prospective economic benefit) has four elements: "(1) a protected interest; (2) malice – that is, defendant's intentional interference without

[11] Boynton has asserted two closely-related, but distinct, causes of action in Count III of its counterclaim against NJ PURE and Count III of its third-party complaint against Third-Party Defendants; that is, Boynton alleges both (1) tortious interference with existing contract and (2) tortious interference with prospective economic advantage. *See Church & Dwight Co. v. SPD Swiss Precision Diagnostics*, No. 10-453, 2010 U.S. Dist. LEXIS 133114, at *12-13 (D.N.J. Dec. 16, 2010); *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 750 (1989). However, the two causes of action have essentially the same elements, differing only with respect to the "the existence of a contract, rather than merely a reasonable expectation of an agreement." *Morin v. 20/20 Cos.*, No. 10-6476, 2012 U.S. Dist. LEXIS 126744, at *30 (D.N.J. Sept. 5, 2012); *McAbee v. Univ. of Med. & Dentistry of N.J. Sch. of Osteopathic Med.*, No. A-5771-09T1, 2012 N.J. Super. Unpub. LEXIS 1516, at *13-14 (App. Div. June 28, 2012).

justification; (3) a reasonable likelihood that the interference caused the loss of the prospective gain; and (4) resulting damages." *Vosough v. Kierce*, 437 N.J. Super. 218, 234 (App. Div. 2014) (quoting *DiMaria Const., Inc. v. Interarch*, 351 N.J. Super. 558, 567 (App. Div. 2001), *aff'd o.b.*, 172 N.J. 182 (2002)), *certif. denied*, 221 N.J. 218 (2015).

NJ PURE incorrectly argues that "[w]ith regard to [OB/GYN], Boynton has not alleged any facts that would give rise to a probability that, without interference of NJ PURE, this entity would have obtained their insurance coverage through Boynton as a broker." On the contrary, Boynton alleged that OB/GYN was already a customer of Boynton's when NJ PURE made its misrepresentation, and that it ceased to be Boynton's client and began procuring medical malpractice insurance directly from NJ PURE based on NJ PURE's alleged misrepresentation. Counterclaim ¶ 40. However, while this allegation supports a claim for tortious interference with an existing contract, it does not support a claim of tortious interference with a prospective economic advantage. *See Fineman v. Armstrong World Indus.*, 980 F.2d 171, 195 (3d Cir. 1992); *Storis v. GERS Retail Sys.*, No. 94-4400, 1995 U.S. Dist. LEXIS 7614, at*14-15 (D.N.J. May 31, 1995) (while a plaintiff need not prove "that it had sufficiently concrete prospective contracts with its customers" in opposition to a motion to dismiss, it must "at least allege specific prospective contracts that were interfered with" by the defendant). Boynton's counterclaim fails to identify any prospective economic advantage it expected from OB/GYN that NJ PURE tortiously interfered with, and, accordingly, that cause of action is dismissed without prejudice.[12]

---

[12] Although Boynton alleges that OB/GYN was its customer, Counterclaim ¶ 40, it alleges no facts which would show that it expected future economic benefits from OB/GYN, other than those obtained under its existing contract. Indeed, the Counterclaim provides no allegation describing what the business relationship OB/GYN had with its former insurance company, brokered by Boynton, and how Boynton was compensated for brokering that relationship. For example, Boynton did not allege that it would receive commission payments if OB/GYN renewed

Boynton has also not alleged any damage with respect to the misrepresentations that Third-Party Defendants made to URG and PAA (on behalf of NJ PURE), because there are no allegations that those entities ceased their relationship with Boynton. Nor is Boynton's vague allegation that unknown, prospective customers may have been lost sufficient to survive dismissal. *See Graco Inc. v. PMC Global, Inc.*, No. 08-1304, 2012 U.S. Dist. LEXIS 188865, at *49-50 (D.N.J. Feb. 15, 2012) ("Economic damages are a substantive element of a tortious interference claim. These damages must be identified with a certain degree of specificity. '[C]laimed loss of . . . unknown customers' is insufficient.") (quoting *Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp.2d 460, 494 (D.N.J.1998)); *Advanced Oral Techs., L.L.C. v. Nutrex Research, Inc.*, No. 10-5303, 2011 U.S. Dist. LEXIS 28625, at *10 (D.N.J. Mar. 21, 2011) ("Plaintiff 'must allege an injury that is more concrete than lost business of unknown, unsolicited, or hypothetical customers.'") (quoting *Novartis Pharmaceuticals Corp. v. Bausch & Lomb, Inc.*, No. 07-5945, 2008 U.S. Dist. LEXIS 92133, at *7 (D.N.J. Nov. 13, 2008)). However, in the event Boynton should learn in discovery the identity of any prospective customers it lost as a result of NJ PURE's alleged misrepresentations, it may amend its pleadings accordingly.

Accordingly, NJ PURE's motion to dismiss Count III of the counterclaim is granted in part with respect to Boynton's claims regarding URG, PAA, and unknown prospective customers, and tortious interference with prospective economic advantage with OB/GYN, and denied in part with respect to Boynton's claim of tortious interference with its contract with OB/GYN. Third-Party Defendants' motion to dismiss Count III of the third-party complaint is granted, and all claims against these individuals are dismissed.

---

its policy with the insurance company brokered by Boynton. Nor did Boynton allege that it lost further opportunities to broker new insurance policies for OB/GYN.

## IV. CONCLUSION

For the foregoing reasons, NJ PURE's motion to dismiss is denied in part and granted in part, and Third-Party Defendants' motion to dismiss is granted. Specifically, NJ PURE's motion to dismiss Counts I and II of the counterclaim is denied. NJ PURE's motion to dismiss Count III of the counterclaim is denied with respect to Boynton's claim of tortious interference with its contract with OB/GYN of North Jersey. NJ PURE's motion to dismiss Count III of the counterclaim is granted with respect to Boynton's claim of tortious interference with its prospective economic advantage with OB/GYN of North Jersey, and tortious interference with its contract and prospective economic advantage with University Radiology Group; Pulmonary & Allergy Associates; and unknown, prospective customers. Third-Party Defendants' motion to dismiss the third-party claims is granted, and the third-party complaint is dismissed.

Dated: October 1, 2015

/s/ The Honorable Freda L. Wolfson

United States District Judge